# STATE OF MICHIGAN

# COURT OF APPEALS

BROTHER CONSTRUCTION, L.L.C.,

     Plaintiff/Counter Defendant,

v

BABUBHAI B. RATHOD and SHAILA B. RATHOD,

     Defendants/Counter Plaintiffs/Cross Plaintiffs/Third-Party Plaintiffs-Appellants,

v

ASSURANCE COMPANY OF AMERICA,

     Defendant/Cross Defendant-Appellee,

and

AL BOURDEAU INSURANCE SERVICES, INC.,

     Defendant/Third-Party Defendant-Appellee,

and

VIJAY RAJESH JOSHI, AUTO OWNERS INSURANCE COMPANY, d/b/a HOME OWNERS INSURANCE COMPANY, and MELTON INSURANCE SERVICES, d/b/a MELTON MCFADDEN INSURANCE AGENCY,

     Third-Party Defendants.

UNPUBLISHED
September 1, 2016

No. 323380
Ingham Circuit Court
LC No. 11-001253-CK

-1-

Before: SHAPIRO, P.J., and O'CONNELL and WILDER, JJ.

PER CURIAM.

Plaintiff Brother Construction, L.L.C. (Brother) brought this action, involving claims of breach of contract and negligence against defendants, Babubhai B. Rathod and Shaila B. Rathod (the Rathods), Assurance Company of America (ACA), and Al Bourdeau Insurance Services, Inc. (the Bourdeau Agency). The Rathods filed various counterclaims, cross-claims, and a third-party complaint. Following the circuit court's resolution of the parties' motions for summary disposition, the circuit court entered an order dismissing with prejudice all claims between the Rathods and Brother. The Rathods filed this appeal as of right. We affirm.

## I. STATEMENT OF FACTS

This case arises from a fire that occurred during the construction of a home owned by the Rathods. In 2009, the Rathods hired Vijay Rajesh Joshi, the owner of Brother, to help with the construction and design of their new home in Okemos, Michigan. Brother obtained a builder's risk insurance policy on behalf of Babubhai Rathod from Ernest Gaffner, an agent at the Bourdeau Agency. According to Joshi, Gaffner told him that the policy would cover the house until completion. Gaffner, however, denied making such a statement.

The Bourdeau Agency procured the builder's risk policy through ACA. The policy provided that the policy period was "**From***:* 09/09/2009 **To***:* 09/09/2010" and that it was a "One-Shot" policy. The policy's endorsement regarding cancellation and renewal provided in part: "If we decide not to renew this policy, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date."

Joshi testified that he never received a notice of cancellation of the policy from the Bourdeau Agency or a notice of nonrenewal from ACA. Babubhai Rathod believed the policy would renew automatically or he would receive a discontinue notice or a bill for the premium for the next year. It is undisputed that the Rathods never paid another premium after the premium for the 2009-2010 policy.

In June 2010, Gaffner received a document noting the expiration date of the policy from ACA. The document provided: "The following 'one shot' Builders Risk Plan policies will be expiring. If renewal is needed, please issue the renewal endorsement . . . . If you do not renew the policy, the policy will expire on the expiration date indicated below." The document also listed Brother's policy with an expiration date of September 9, 2010. Gaffner testified that, in the past, the insured would contact him if the insured wanted the policy renewed.

Rachele Holden, the Assistant Vice-President of Builder's Risk for ACA, stated in her affidavit that builder's risk policies are typically written for one year or less depending on the expected length of the construction period and they expire by their terms more than 80% of the time because the construction project is completed within a year. She further averred that a "one-shot" policy is a policy that "is one year unless there are affirmative steps taken by the

customer to renew coverage beyond the one-year term." Holden also stated that no application was sent to ACA to extend or renew the policy at issue, although ACA was willing to renew the policy.

The Rathods' home was destroyed by a fire on January 28, 2011. At the time of the fire, the home was approximately 95% complete. On February 7, 2011, David Bourdeau, the owner of the Bourdeau Agency, emailed a representative of ACA requesting that ACA "make a determination to allow for a policy Reformation or Agency Accommodation [and] thus, honor this claim for the Policy Holder." In a subsequent email sent to ACA on February 9, 2011, David Bourdeau explained that an employee copied an existing electronic file for Brother, which "[f]atally," "had a one word notation ('Done') attached designating the building as a completed project." Accordingly, the policy was set up in the system as not needing to be renewed. In "reviewing the September 2010 expiration/renewal list," the employee disregarded notices related to Brother's policy, incorrectly accepting that renewal was not needed. David Bourdeau stated that, in December 2010, neither Gaffner nor Brother knew the policy was not renewed. David Bourdeau further stated: "Our expectation and intent was that [ACA] would continue until the home was completed. [ACA] would have renewed the policy; otherwise [ACA] would have sent a notice directly to the policy holder." On February 16, 2011, ACA sent a letter to Brother and the Rathods indicating that ACA would not provide coverage for their claim because the loss occurred after the policy period ended, as the policy expired on September 9, 2010.

## II. PROCEDURAL HISTORY

Brother filed a complaint alleging breach of contract by the Rathods and breach of the insurance contract by ACA. The Rathods filed counterclaims of breach of contract and negligence against Brother, a cross-claim of breach of contract against ACA, and a third-party complaint alleging negligence against the Bourdeau Agency.[1] Brother subsequently amended its complaint to add, *inter alia*, claims of negligence against ACA and the Bourdeau Agency. The Rathods also filed an amended complaint. Of relevance to this appeal, the Rathods' amended complaint alleged negligence against the Bourdeau Agency for failing to inform Brother or the Rathods that ACA did not intend to renew the policy.

The parties filed numerous motions for summary disposition. Of relevance to this appeal are (1) ACA's, Brother's, and the Rathods' cross-motions for summary disposition on Brother's and the Rathods' breach of contract and negligence claims against ACA; (2) the Bourdeau Agency's and Brother's cross-motions for summary disposition on Brother's negligence claims against the Bourdeau Agency; and (3) the Bourdeau Agency's and the Rathods' cross-motions for summary disposition on the Rathods' negligence claim against the Bourdeau Agency.

---

[1] The Rathods also asserted third-party claims against Joshi, Home-Owners Insurance Company, and Melton Insurance Services, Inc.

On December 9, 2013, the circuit court entered an opinion and order (1) granting ACA's motion for summary disposition, (2) denying in part the Bourdeau Agency's motion,[2] (3) denying Brother's motion for summary disposition, and (4) denying the Rathods' motion for summary disposition. First, regarding Brother's and the Rathods' claim that ACA breached the contract by failing to provide a notice of nonrenewal of the policy to Brother, the circuit court held that the plain language of the nonrenewal endorsement only required a notice of nonrenewal when ACA "decides" not to renew a policy and there was no evidence that ACA made a decision not to renew Brother's policy. The circuit court concluded that the June 8, 2010 document sent to the Bourdeau Agency demonstrated that ACA was willing to renew the policy and that the February 9, 2011 email from the Bourdeau Agency also supported this interpretation. The circuit court rejected Brother's contention that notice was required if ACA was going to allow the policy to expire without automatically renewing the policy, finding instead that the policy did not require automatic renewal absent notice, and that Brother did not apply for a renewal policy or pay any premium in order to accept an offer of renewal.

The circuit court next concluded that genuine issues of material fact precluded summary disposition of Brother's claim of negligence against the Bourdeau Agency for its alleged failure to procure the requested insurance policy, and of alleged failure to inform Brother that coverage would not last until the end of construction. Specifically, the circuit court found that the evidence that the Bourdeau Agency believed the policy would remain in effect after expiration because construction had not yet been completed created a genuine issue of material fact regarding whether the Bourdeau Agency procured the coverage requested by Brother. The circuit court also found the existence of a genuine issue of material fact regarding whether the Bourdeau Agency misrepresented the nature of Brother's coverage or promised Brother that coverage would extend until the completion of construction, thereby assuming an additional duty to advise. Finally, the circuit court found there was a question of fact regarding whether the Bourdeau Agency's notation of "Done" caused the Bourdeau Agency not to advise Brother that it would need to renew its policy in order to obtain the coverage that both Brother and the Bourdeau Agency intended. Accordingly, the circuit court denied summary disposition on this claim.

Lastly, regarding the Rathods' claim that the Bourdeau Agency owes them a duty as foreseeable third-party beneficiaries of the policy with Brother, and that this duty was breached by failing to advise Brother of ACA's intent not to renew the policy, the circuit court found the Rathods' argument unpersuasive. The circuit court held that the Bourdeau Agency made no promise to the Rathods that established a special relationship and duty to advise; therefore, the Rathods could not establish an independent duty. The circuit court also found that the foreseeability of harm to the Rathods due to expiration of coverage was insufficient to establish a duty on which a claim of negligence could be based. The circuit court stated that, instead, the Rathods' claim was properly based on the alleged breach of contract by Brother, and that Brother

---

[2] The circuit court granted the Bourdeau Agency's motion for summary disposition on Brother's breach of fiduciary duty claim.

-4-

may prove that the Bourdeau Agency is liable by proving the existence of a special relationship and breach of the agency's duty to advise.

The Rathods filed a motion for reconsideration related to the claims against ACA, arguing that despite the circuit court's ruling that the policy did not require notice of nonrenewal before expiration, the circuit court erred by failing to address the Rathods' argument that ACA was required to send a renewal notice.

The circuit court entered an opinion and order denying the Rathods' motion for reconsideration as meritless, holding that "the absence of any notice of nonrenewal creates an implied offer to renew that the insured can accept by paying the required premium before the policy's expiration; it does not require any notice of the implied offer." The circuit court further found that no provision of the ACA policy required a "notice of renewal" to be sent before the end of the coverage period or that coverage would be automatically continued without such notice.

On March 13, 2014, the circuit court entered a stipulation and order of dismissal of Brother's claims against the Bourdeau Agency.[3] On August 6, 2014, the circuit court entered an order, after stipulation of Brother and the Rathods, dismissing with prejudice all claims between Brother and the Rathods. The stipulation and order was contingent on the Rathods' compliance with a settlement agreement effective July 1, 2014.[4] This appeal ensued.

## III. ANALYSIS

The Rathods first contend that ACA breached the insurance policy by failing to send written notice of nonrenewal or a renewal certificate. We disagree.

The circuit court's decision to grant summary disposition under MCR 2.116(C)(10) is reviewed de novo. *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013). "In reviewing a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and other evidence introduced by the parties to determine whether no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id*. at 73. The circuit court must consider the evidence submitted "in the light most favorable to the opposing party." *Id*. (citation and quotation marks omitted).

We also review de novo "[t]he proper interpretation and application of an insurance policy." *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 518; 847 NW2d 657 (2014) (citation and quotations marks omitted).

---

[3] The order also dismissed Brother's claims against Gaffner, which were brought in a separate action that was consolidated with this action below.

[4] According to the Rathods' brief on appeal, Brother assigned its claims against ACA to the Rathods.

"An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." "[I]nsurance polic[i]es *are* subject to the same contract construction principles that apply to any other species of contract." " 'The primary goal in the construction or interpretation of a contract is to honor the intent of the parties[.]' " "[T]he language of the parties' contract is the best way to determine what the parties intended."

Accordingly, an insurance contract should be read as a whole and meaning should be given to all terms. The policy application, declarations page of policy, and the policy itself construed together constitute the contract. The contractual language is to be given its ordinary and plain meaning. An insurance contract must be construed so as to give effect to every word, clause, and phrase, and a construction should be avoided that would render any part of the contract surplusage or nugatory. "[U]nless a contract provision violates law or one of the traditional [contract] defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." "[T]he judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions." A provision in a contract is ambiguous if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning. [*Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 714-715; 706 NW2d 426 (2005) (citations omitted; second aleration added).]

The relevant policy language is contained in the endorsement regarding cancellation and renewal, which provided in part: "If we decide not to renew this policy, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date." The plain and unambiguous language of the endorsement supports the circuit court's interpretation that a notice of nonrenewal was only required when ACA made a decision not to renew the policy. Although the policy does not define any of the relevant words of the endorsement, the endorsement language is not rendered ambiguous and such terms must be interpreted in accordance with their commonly used meanings. *Heath v State Farm Mut Auto Ins Co*, 255 Mich App 217, 218-219; 659 NW2d 698 (2002).[5] "Decide" is defined, in relevant part, as "to make a final choice or judgment about" and "to select as a course of action." *Merriam-Webster's Collegiate Dictionary*

---

[5] Because the policy was not ambiguous, the Rathods' or any particular individual's reasonable expectation is irrelevant. See *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 62; 664 NW2d 776 (2003) ("[T]he rule of reasonable expectations clearly has no application when interpreting an unambiguous contract because a policyholder cannot be said to have reasonably expected something different from the clear language of the contract.").

(2014). Accordingly, a notice of nonrenewal is only required to be sent when ACA *chooses* or *selects* not to renew the policy. While the Rathods argue that the definitions of "nonrenew" do not imply any particular reason for the nonrenewal and, therefore, include nonrenewal by expiration, the term "decide" implies a choice by the insurer. The circuit court properly found that a notice of nonrenewal is not required when the policy is going to expire and ACA is willing to renew the policy. In this case, there was evidence that ACA was willing to renew the policy. The list sent by ACA to Gaffner expressly stated: "If renewal is needed, please issue the renewal endorsement . . . ." Holden also averred that ACA was willing to renew the policy. The Rathods have failed to present any evidence that ACA was not willing to renew. Moreover, the circuit court properly found that the plain language of the policy did not require that ACA to provide a notice of renewal.

The Rathods contend that the insurer has a duty to provide notice of nonrenewal if the policy is to nonrenew by expiration. We disagree. In *Slaughter*, 167 Mich App at 403, the insurer sent its insureds a notice of cancellation, including a notice of intent not to renew, but before the notice of cancellation became effective, the insurer reinstated the policy. *Id.* at 404. Finding no statute governing nonrenewal, the Court looked to the provisions of the policy at issue, which included a nonrenewal clause that provided: "Non-Renewal: If the Company elects not to renew this policy, it shall mail to the insured named in item 1 of the declarations at the address shown in this policy, by first class mail, a written notice of non-renewal not less than 20 days prior to the expiration date." *Id.* This Court concluded that the reinstatement of the policy obligated the insurer to send another notice of nonrenewal in order to bring the policy to an end on its expiration date. *Id.* "[W]hen [the insurer] reinstated the policy after cancelling it (or sending notice of nonrenewal) it became obligated by its own agreement to again send notice of its intent either to cancel or not to renew." *Id.* at 405. The Court further concluded that the failure to give the policy-mandated notice resulted in renewal of the policy. *Id.* at 405-406. Finally, the Court concluded that even if there was any merit to the insurer's "after-the-fact expression of its intent" to renew the policy, there was insufficient evidence to support it. *Id.* at 406.

Given that the insurer in *Slaughter* sent a notice of cancellation and then reinstated the policy, the facts in *Slaughter* are distinguishable from the facts in this case.[6] The *Slaughter* Court suggested both that the reinstatement in that case obligated the insurer to send another notice of nonrenewal, and that the insurer "became obligated by its own agreement to again send notice." *Id.* at 405. It is unclear, therefore, whether *Slaughter* concluded that notice of nonrenewal was required based on the language of the policy alone or whether the fact that the policy was reinstated after cancellation was relevant. Nonetheless, because there was no evidence in *Slaughter* of the insurer's willingness to renew the policy, *Slaughter* did not decide whether notice of nonrenewal would have been required if the insurer had been willing to renew the policy. In this case, however, there was evidence that ACA was willing to renew the policy.

---

[6] Because *Slaughter* was decided before November 1, 1990, we are not bound to follow it, see MCR 7.215(J), but we nevertheless analyze *Slaughter* here becase it's facts and holding are instructive as applied in the instant matter.

-7-

Therefore, under the plain language of the endorsement, a notice of nonrenewal was not required.

The circuit court also properly rejected the Rathods' argument that ACA was required to send them a notice of renewal. While not specifically addressing whether notices of renewal were required, this Court's decision in *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 239-240; 507 NW2d 741 (1993), supports the conclusion that termination of a policy is automatic at the end of the policy term. The nonrenewal provision in that case provided: "We may decline to renew this policy. If we do, we will mail notice of nonrenewal to the Principal Named Insured at the address last known to us at least 30 days before the end of the policy term." *Id*. at 236. The Court concluded that this provision was "clear and unambiguous regarding nonrenewal of the policy at the option of the insurer or the insured. Failure by the insured to pay the required renewal premium means that the insured declined the insurer's offer of renewal, and the policy automatically terminated at the end of the policy term." *Id*. at 239-240. The Court further found that although renewal notices were sent to the plaintiffs, there was "no suggestion that the defendant waived its right to automatic termination by the sending of the notices offering renewal options." *Id*. at 240. Here, there is no dispute that neither the Rathods nor Brother paid a renewal premium, and, therefore, they declined ACA's implied automatic offer to renew that was extended absent a notice of nonrenewal. In conclusion, the circuit court correctly held that ACA was not required to provide notice of renewal or nonrenewal. Additionally, because ACA lacked any duty to send notice of expiration or nonrenewal, it also lacked a duty to discharge to the Bourdeau Agency and ACA is not liable for the Bourdeau Agency's alleged failure to provide such notice. Thus, the circuit court properly granted summary disposition in favor of ACA.

The Rathods also contend that the circuit court erred in ruling that they were not foreseeable third-party beneficiaries of Brother's direction to the Bourdeau Agency to provide a policy that would cover the entire period of construction. We disagree.

As discussed above, the circuit court granted summary disposition on the Rathods' claim that the Bourdeau Agency owed them a duty as foreseeable third-party beneficiaries of the policy with Brother and that this duty was breached by failing to advise Brother of ACA's intent not to renew the policy. The circuit court found that the foreseeability of harm to the Rathods due to expiration of coverage was insufficient to establish a duty on which a claim of negligence could be based.

The Rathods' argument on appeal, however, that they were foreseeable third-party beneficiaries of Brother's direction to the Bourdeau Agency to provide a policy that would cover the entire period of construction, differs from the claim made in their complaint and actually ruled on by the circuit court. Thus, we decline to address this question which the trial court also had no obligation to address. See MCR 2.116(G)(4) ("A motion under subrule (C)(10) must *specifically* identify the issues as to which the moving party believes there is no genuine issue as to any material fact.") (emphasis added); *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 377; 775 NW2d 618 (2009) (noting that the moving party bears the burdens of proof and persuasion regarding a motion for summary disposition and that there is no "burden on the trial court to scour the lower court record in search of" grounds for granting or denying such a motion); *Smit v State Farm Mut Auto Ins Co*, 207 Mich App 674, 685;

525 NW2d 528 (1994) ("As a general rule, this Court declines to consider an issue that was not decided by the trial court.").

Affirmed. ACA and the Bourdeau Agency, being the prevailing parties, may tax costs pursuant to MCR 7.219.


/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Kurtis T. Wilder